GIRARD TRUST CORN EXCHANGE BANK, EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF WILLIAM B. GRIFFITH, DECEASED, AND HERBERT W. ROYAL AND CAMDEN TRUST COMPANY, EXECUTORS AND TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF STELLA R. GRIFFITH, DECEASED, PLAINTIFFS, v. CAROLYN M. GRIFFITH, H. WILLIAM ROYAL, WILLIAM EDWIN ROYAL, DEBORAH ELIZABETH ROYAL, HERBERT W. ROYAL, DORA M. S. ROYAL, AND THE UNBORN CHILDREN OF H. WILLIAM ROYAL, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 20, 1958.

Mr. *W. Louis Bossle,* attorney for plaintiff.

*Messrs. Cassman and Gottlieb,* attorneys for defendant Carolyn M. Griffith.

*Mr. Joseph F. Greene, Jr.,* guardian *ad litem, pro se.*

*Mr. Joseph R. Moss,* attorney for defendant William H. Royal.

DRENK, J. C. C. (temporarily assigned). This matter seeks the construction of the will of William B. Griffith and Stella R. Griffith, deceased husband and wife. Plaintiffs Herbert W. Royal and Camden Trust Company, executors of the estate of Stella R. Griffith, also seek instruc-

tions regarding the collection of the New Jersey inheritance tax assessed against the share of Carolyn M. Griffith, a daughter of the decedents and a legatee under both wills.

With the exception of the admissibility of certain declarations made by Stella R. Griffith, the facts are admitted. The declarations were adduced in the deposition on written interrogatories of Herbert W. Royal. It appears to me that the deposition is not required in construing the will of Stella R. Griffith, so that no ruling is made upon its admissibility.

■ I am of the opinion that the intention of both testators is clear in their respective wills and also clear when read together, so that there is no need to apply the rules of construction, *Morristown Trust Company v. McCann,* 19 *N. J.* 568 (1955); *Rosencrans v. Fry,* 12 *N. J.* 88 (1953).

William B. Griffith and Stella R. Griffith were the father and mother of Carolyn M. Griffith. The father's estate is by far the more substantial. They made, originally, practically identical wills, each bearing the date September 19, 1953. Each will created an annuity of $1,000 per month for the daughter. The father and mother also executed practically identical codicils to the will of September 19, 1953, which do not bear upon the provisions of the respective wills creating the annuity for the daughter.

William B. Griffith died first, on April 1, 1954. The provision in his will of September 19, 1953, establishing the annuity for the daughter is as follows:

"SEVENTH : Commencing with the death of my wife, STELLA R. GRIFFITH, or with my death if my said wife shall not survive me, there shall be paid to my daughter, CAROLYN M. GRIFFITH in monthly installments during her lifetime, such sum which, together with all other income then being received by her, as shall aggregate $1,000 per month. My Trustee is authorized to pay to my said daughter such sums from the principal of the Residuary Trust as in its sole discretion shall be necessary or advisable from time to time to maintain her in the standard of living to which she had been accustomed, and for her medical care, welfare and emergency needs and the purchase of a dwelling for her if that should be desirable. In thus encroaching upon the principal of the Residuary Trust, my

Trustee shall take into consideration all other income and cash resources available to my said daughter for such purposes from all sources known to it."

The mother's will, dated September 19, 1953, contained a nearly identical provision. This will was revoked by a subsequent will made by Stella R. Griffith, dated February 21, 1955. A codicil thereto was dated September 19, 1955. Stella R. Griffith died June 12, 1956. Her will of February 21, 1955 made the following provision for the annuity to the daughter Carolyn.

"FOURTH: (a) If my daughter, CAROLYN M. GRIFFITH, survives me, then commencing with my death, there shall be paid to my daughter in monthly installments during her lifetime, such sum which, together with all other income then being received by her, as shall aggregate $1,200.00 per month. If the income of said trust shall be insufficient, the principal thereof may be used to make such payments. If there is more than sufficient income to make such payments, then such overplus shall be paid monthly to my brother, HERBERT W. ROYAL, or, if he is not living, or on his death, then to his wife, DORA M. S. ROYAL.

FIFTH: It is my intention to limit the income which my daughter, CAROLYN M. GRIFFITH shall receive from all sources to a maximum of $1,200.00 per month. Notwithstanding that intention, and in order to provide for emergencies, my trustees are authorized to pay to my said daughter such sums from the income or principal of my estate as in their sole discretion shall be necessary or advisable from time to time to maintain her in the standard of living to which she has been accustomed, and for her medical care, welfare and emergency needs, and for the purchase of a dwelling for her if that should be desirable."

The codicil of September 19, 1955 ratified and confirmed the will of February 21, 1955 and corrected the same by providing;

"FIRST: I hereby correct and amend sub-paragraph (a) of the FOURTH paragraph of my said Will to read as follows:

(a) If my daughter, Carolyn M. Griffith, survives me, then commencing with my death, there shall be paid to my daughter in monthly installments during her lifetime, such sum which, together with all other income then being received by her, as shall aggregate $1,200.00 per month. If the income of said trust shall be insufficient, the principal thereof may be used to make such payments. If there is more than sufficient income to make such payments, then such

overplus shall be paid monthly to my brother, HERBERT W. ROYAL. If my said brother should predecease me, or upon his death if he survives me, then such overplus shall be paid monthly to his wife, DORA M. S. ROYAL; or, if she is not then living, or upon her death if she survives him, then such overplus shall be paid monthly to their son, my nephew, H. WILLIAM ROYAL, for the education of his children; or, if he is not then living, or upon his death if he survives his mother, DORA M. S. ROYAL, then such overplus shall be paid monthly to his then living children in equal shares, share and share alike."

The major change in the annuity provisions of the 1955 will and codicil of Stella R. Griffith from that of the 1953 will was to increase the annuity to the daughter Carolyn from $1,000 to $1,200 per month. An additional change is that the 1955 will and codicil provides for a gift over of income in excess of that required to maintain the $1,200 per month, to others than the daughter.

While the original wills and the codicils of both testators, were similar, there was no provision in either against a future change by either testator. They are not mutual wills, even though basically they are according to what appears to be a mutual plan. That is, each testator seeks to provide for the daughter after the death of the survivor of them. At the same time it is evident that both testators, for whatever reason, desire to limit the income of the daughter, but only to the extent that she receive a sum not in excess of the sum necessary to maintain the standard of living to which she was accustomed while her parents were living.

Standing alone, each will is clear and concise as to the intention of the respective testators. It is only when the wills are read together that any difficulty is presented. The primary question thus presented is to what extent should each estate contribute to the monthly payment of the annuity bequeathed the daughter.

It is clear that both the father and mother, by their 1953 wills and codicils, desired to limit the daughter's monthly income from all sources to $1,000, except for the contingencies set forth therein. On April 1, 1954, the father died. Thereafter, by will of February 21, 1955 and the codicil

of September 19, 1955, the mother changed her will, but insofar as the annuity payable to the daughter is concerned, only to the extent of increasing the monthly payments to $1,200 from all sources. While it might be argued, though to me highly improbable under the circumstances, that the mother might not have known of the provisions of the father's will at the time of the execution of the wills and codicils of 1953, it cannot possibly be considered that she did not know of them at the execution of her 1955 will and codicil, which were executed months after the death of her husband. During the intervening time she must have been necessarily receiving the benefits under her husband's will. Stella R. Griffith must have necessarily had in mind, that upon her death her daughter was to receive an annuity of $1,000 per month from the father's estate, less, of course, such other income the daughter was then receiving. Having this fact in mind, the mother bequeathed an annuity of $1,200 per month, less all other income being received by the daughter.

Furthermore, Stella R. Griffith certainly knew at the time of the execution of her will that her daughter Carolyn was born January 31, 1907. She must have been cognizant of the fact that in 1955 her daughter would still have a substantial life expectancy. She must also have known the extent of her own personal estate. On November 22, 1957 the Camden Trust Company, one of the executors of Stella R. Griffith, wrote to W. Louis Bossle, Esquire, attorney for the plaintiffs. That communication discloses that the gross estate of Stella R. Griffith was then $122,853.40, with an approximate gross income of $4,835.85. Such being the case, then it must have been within the contemplation of Stella R. Griffith that the annuity bequeathed by her would take into consideration the $1,000 per month bequeathed by the father. This conclusion is strengthened by the gift over of excess income to others than the daughter. Any other conclusion would be an indicia of testamentary incapacity on the part of Stella R. Griffith, which appears nowhere in the case, either directly or indirectly. It there-

fore seems clear to me, that the mother, knowing of the provisions of the father's will, intended to provide for any deficiencies of income in the husband's estate, and to increase the monthly payment from $1,000 to $1,200 for the daughter.

In regard to the monthly payment to the daughter, both wills use the phrase "together with all other income then being received by her"—that is, the daughter. Both wills provide for the use of *corpus*. But this latter is with a difference.

It is to be noted that the father's will provides;

"In thus encroaching upon the principal of the Residuary Trust, my trustee shall take into consideration all other income and cash resources available to my said daughter for such purposes *from all sources known to it.*" (Emphasis added)

The mother's will provides:

"*If the income of said trust shall be insufficient, the principal may be used to make such payments.*" (Emphasis added)

The father's will clearly indicates that the *corpus* of his estate is to be used to maintain his daughter in the manner to which she was accustomed and to provide for contingencies, but in so doing the trustee is charged to take into consideration "all sources known to it." Certainly the mother's estate is a source known to the father's trustee.

The mother, however, provides that the *corpus* of her estate may be used whenever the income therefrom is insufficient to meet the monthly payments.

I therefore find that the plaintiff Girard Trust Corn Exchange Bank, executor, *etc.*, shall ascertain the income of Carolyn M. Griffith, excluding any payment to which she may be entitled from the estate of Stella R. Griffith, and shall pay to Carolyn a sum equal to the difference between such income and $1,000 per month.

I further find that plaintiffs Herbert W. Royal and Camden Trust Company, executors, *etc.*, shall ascertain the

income of Carolyn M. Griffith, including any sum which she may be entitled to receive from the estate of William B. Griffith, and shall pay to Carolyn a sum equal to the difference between such income and $1,200 per month.

In the event that the total income from both the father's and mother's estate, together with all other income received by Carolyn M. Griffith shall not aggregate the sum of $1,200 per month, then I do find that the executors of the mother's estate shall pay to Carolyn such sum from the *corpus* of the estate of Stella R. Griffith as may be necessary to give Carolyn an aggregate income of $1,200 per month.

In the event that the income of the estate of Stella R. Griffith exceeds the sum necessary to make up the payments to Carolyn as stated above, then I find that the executors of said estate shall pay such "overplus" monthly to the legatees as designated in the will of Stella R. Griffith.

I further find that the New Jersey inheritance tax which is assessed on the basis of the annuity bequeathed by Stella R. Griffith to her daughter, shall be paid by the annuitant by a proportion of the amount assessed being deducted from each monthly payment to her. *In re Kaegebehn's Estate*, 16 *N. J. Misc.* 388 (*Orph. Ct.* 1938).

I further find that such proportional deduction shall be based on table of mortality used by the New Jersey Inheritance Tax Bureau in making the assessment.

In making the above findings I am aware that the mother's estate may be depleted thereunder, and that by paying the excess income to the legatees entitled to the overage on a monthly basis, may require the use of *corpus* in any one year. I am convinced, however, that the mother regarded the father's estate as the primary source of the annuity for her daughter, and that it should be conserved, even to the extent of first depleting her own estate, so that the daughter's standard of living should be maintained. I am also convinced that the mother considered her estate to be sufficient under normal conditions to increase the daughter's monthly payment by $200 and to produce an excess income to be paid to the others as designated.

I am also aware that should Carolyn M. Griffith die before the entire tax assessed by reason of her annuity is collected by withholding the same from her income, that she will not have personally been charged with the entire sum. Nor should she under the reasoning of *In re Kaegebehn's Estate, supra*.

An appropriate judgment, embodying the above conclusions will be signed when presented.